PETITION OF HERMAN : HERMAN and another, Respondents, vs. PUTNAM, Appellant.

*January 18—February 13, 1940.*

654

For the appellant there was a brief by *Edward J. Hart* of Waupaca, and oral argument by *Mr. Hart* and by *Mr. Giles H. Putnam* of New London, *in pro. per.*

For the respondents there was a brief by *Larrabee & Larrabee* of Chippewa Falls, and oral argument by *Orrin H. Larrabee.*

WICKHEM, J. The nature of the contentions here made require a statement in some detail of the facts giving rise to the controversy. Respondents Gertrude and Charles Herman secured a judgment of about $8,000 against one Wainer for damages sustained as a result of the death of their son through the negligence of Wainer. Respondents were represented in this action by Messrs. Larrabee & Larrabee, attorneys at law at Chippewa Falls, Wisconsin. These attorneys had a contingent-fee contract whereby they were to receive one third of any amount recovered whenever the judgment was collected. Being unable to collect the judgment, an action was started in the circuit court for Waupaca county in May, 1937, against Wainer and others to set aside as fraudulent to creditors certain transfers of property theretofore made by Wainer. At this stage of the proceedings Mr. Putnam was employed as associate counsel to assist Mr. Larrabee in the trial of this action and to collect the judgment. Under the agreement Mr. Putnam was to receive one fourth of the Larrabees' contingent fee as compensation for his services. After two days of trial the action was settled. By the terms of the settlement Wainer conveyed to respondents a business block in New London, subject to a $4,500 mortgage owned by one Breakstone. The Hermans executed to one Marian Berg a $750 second mortgage, payable in monthly instalments of $25 without interest. In addition to this there were tax delinquencies amounting to $400. The total incumbrances against the property amounted to $5,650, which left an equity of $4,350, a contingent fee

of $1,450, and Mr. Putnam's share of this fee, $337.50. It was the understanding of the parties that Mr. Putnam was to take charge of the building, collect the rents, pay to Marian Berg $25 per month until her $750 mortgage was paid, and from the balance of the rentals pay interest on the mortgage, taxes, other expenses, and attorneys' fees. Mr. Putnam proceeded to collect the rents and make disbursements, and it appears from his statement that his receipts were $1,350.50, his disbursements $1,055.85, leaving a balance in his hands of $294.65, against which he claims an offset of $450 owed to him by respondents. The court examined the account and found that Mr. Putnam had received $1,420.50 instead of $1,350.50, and that the total amount paid out by Mr. Putnam was $904.85, leaving a balance due of $515.65. We have examined these items and see no ground upon which to disturb the court's findings, and no useful purpose in a detailed consideration of the manner in which the court arrived at this balance except in one respect. In his account, Mr. Putnam charges a total of $105 for attorneys' fees in connection with services rendered at the request of the Larrabees in handling a foreclosure of the first mortgage by Breakstone shortly after Mr. Putnam took charge of the property. It appears in evidence that when the first mortgagee sought to foreclose and to have a receiver appointed, Mr. Larrabee wrote Mr. Putnam and asked him to take care of the matter. Mr. Putnam's contention is that his only duties under the agreement were to collect rents, pay the second mortgagee $25 a month, pay interest on the Breakstone mortgage, pay taxes, and make necessary repairs, and that the agreement did not include any legal services such as would be involved upon a foreclosure of the first mortgage. This presents a question that is not without difficulty, but we conclude that the trial court correctly held that Mr. Putnam never had any connection with this case except to assist in collecting the judgment, and that all of his services in this respect were to

be compensated wholly by his contingent fee. The plan of collection was threatened by the foreclosure and receivership proceedings, and Mr. Putnam's services were in accordance with his employment and in furtherance of the objects of his retainer upon a contingent fee. The fact that the services were legal in character does not change the situation. He was retained as a lawyer to assist in the collection of the judgment.

The next question was whether the court erroneously held that Mr. Putnam was not entitled to his contingent fee immediately after settlement of the Wainer case. It is claimed that Mr. Putnam became entitled to his fee as soon as the fraudulent-conveyance case was terminated and property received by respondents in settlement. The trial court properly concluded from all of the evidence in this case that such was not the understanding of the parties. If the agreement was as claimed by Mr. Putnam, then it is difficult to see why he was engaged to handle the property without express understanding as to compensation. Furthermore, the evidence shows that the settlement with the Wainers left the Hermans with nothing out of which a contingent fee could presently be paid. They took the property because they could not get the cash. The property was incumbered in such a way that it was impractical to convey undivided interests to the attorneys in return for their services. All agreed that the property would be so handled and managed as to produce funds both to satisfy respondents and pay out the contingent fees. Until efforts had been made in this direction it was problematical whether there was any equity in the property, and if there was not respondents would get nothing by the settlement and the contingent fees would never become payable. Hence, we conclude that at all events contingent fees were not due immediately upon the settlement of the case. The more difficult question is whether, (a) they were due only upon a sale of the premises, or (b) they were due in instal-

ments out of income only after all mortgages and liens were fully paid, or (c) they were due in instalments out of income after all other current charges and expenses were paid. We conclude that (c) represents the agreement of the parties, including Mr. Putnam. In the letter of the Larrabees of May 20, 1936, addressed both to respondents and to Mr. Putnam and acquiesced in by all of them, the value of the premises is assumed to be $10,000; the equity is appraised at $4,350; the total contingent fees of one third is estimated at $1,450, and Mr. Putnam's share of that at $337.50. The letter proceeds:

"It was further agreed that Mr. Putnam should collect the rentals, and handle the property in New London, paying first therefrom, $25 per month to Marian Berg until her $750 mortgage, without interest, was paid. From the balance of the rentals, the interest on the mortgage, the taxes, both delinquent and current when the same accrue, and the payment of the attorneys' fees to both Mr. Putnam and Larrabee & Larrabee, was to be paid."

It seems to us quite clear under this agreement that when the instalments on the Berg mortgage, together with the interest and taxes, were currently paid, the surplus from the rentals was to be applied to the contingent fee. There is no intimation that the property must first be sold or that the principal of the mortgages must completely be discharged. The very purpose of listing the assumed value of the premises and computing the contingent fee was to make certain the amount of the latter so that instalments out of the income of the property could be credited upon it. The only items that were listed as having to be paid in advance of the attorneys' fees were instalments on the Berg mortgage, current interest, current taxes, and delinquent taxes. Presumably, other expenses of management are impliedly included. As long as those were currently met any surplus that existed was available for respondents and the attorneys on the basis of the contingent-fee agreement. Hence, if there was a surplus in

the current earnings of the property it was payable two thirds to respondents and one third to the attorneys. Of this one third, Mr. Putnam was entitled to one fourth. On February 5, 1938, after the property had been refinanced by a loan of $5,000 from the Wisconsin National Life Insurance Company of Oshkosh, the Larrabees and respondents entered into an agreement wherein it is recited that by the terms of this mortgage all rentals received from the property are to be paid to the mortgagee for the purpose of paying interest, taxes, repairs, insurance, and expenses incidental to the operation of the building, and the balance in reduction of the principal of the mortgage, and that therefore no net income will be received by either the respondents or the Larrabees until the mortgage is paid in full or the property sold. It is therefore agreed that the interest of the Larrabees is limited to a right to receive, after the mortgage is paid, one third of the net rentals or, in the event that the property is sold, one third of the excess over and above the mortgage subject to a limitation that the total amount received by the Larrabees shall be not more than $1,000. Mr. Putnam was not a party to this agreement, and we think it cannot affect his rights. It is conceded that it was ineffective to reduce the amount of his fee. This agreement is evidently the basis upon which the trial court determined that no contingent fees were to be due until the mortgage was paid or the premises sold. We think this conclusion, however correct it may be so far as the Larrabees are concerned, is erroneous so far as Mr. Putnam is concerned. As against respondents and the Larrabees, Mr. Putnam is entitled out of the income of the property to receive twenty-five per cent of one third of the net rentals, and the fact that respondents have by an agreement not assented to by Mr. Putnam obligated themselves to dispose of the net rentals otherwise than in accordance with their agreement with him, does not impair their obligation so to account to him. The trial court did not, and we cannot,

determine whether any part of the $515.65 ordered to be paid by Putnam to respondents constituted a surplus over the sums required for current expenses as heretofore indicated. We are therefore not in a position to say whether Putnam is entitled to withhold some portion of the amount ordered to be paid by him or if he is how much that amount is. We think, therefore, that the record must be remanded to the trial court for the purpose of trying this issue and ascertaining this fact.

It is finally contended that the trial court erred in allowing the sum of $50 attorneys' fees as a taxable item of costs. In its original disposition of the matter the trial court did not pass upon the question of attorneys' fees, but the respondents inserted in their bill of costs the item of $50 for attorneys' fees, and the clerk allowed the item. Upon review of the taxation of costs the court held as follows:

"The sum of $50 is just and reasonable and the amount taxed by the clerk will not be disturbed."

It is contended that the clerk had no authority to approve this item in the bill of costs without any authorization by the court, and that the matter was not cured by the subsequent approval by the trial court. This contention cannot be sustained. The trial court had control of the costs to the extent to which discretion is vested in him by the statutes and could exercise this discretion either prior to the taxing of costs or upon a review of the costs.

*By the Court.*—Judgment reversed, and cause remanded with directions to the trial court to ascertain if any portion of the amount found to have been withheld by appellant constituted surplus rentals available for attorneys' fees, and if any such surplus is found, to ascertain the amount to which appellant is entitled and to deduct this amount from the sum required by the court to be paid to the respondents. No costs to be taxed upon this appeal. Appellant to pay clerk's fees.